EDWARD W. HOOPER & another, executors, *vs.* EDWARD P. SHAW.

SAME *vs.* SAME.

Suffolk.   March 19, 1900. — May 18, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, HAMMOND, & LORING, JJ.

*Collateral Inheritance Law — Payment of Tax — Charitable Institution.*

A legacy tax paid to the United States under the St. of June 13, 1898, c. 448, §§ 29, 30, is to be deducted before paying the State succession tax under St. 1891, c. 425.

A legacy left to the New England Trust Company of Boston, " the interest of which they will pay to needy aged men and women who had been in better circumstances in early life but had become in want when in old age," is not to or for a charitable institution within the meaning of the collateral inheritance law, St. 1891, c. 425.

TWO PETITIONS to the Probate Court by the executors of the will of Edward Austin, asking instructions as to the payment of a succession tax under St. 1891, c. 425. Decrees were entered and a hearing was had in this court on appeal, before *Knowlton,* J., who reserved the cases for the consideration of the full court. The facts appear in the opinion.

*J. C. Gray*, for the petitioners.

*A. W. DeGoosh*, Assistant Attorney General, for the respondent.

HOLMES, C. J. Only two questions were argued before us. The first of these is whether the legacy tax paid to the United States under St. June 13, 1898, c. 448, §§ 29, 30, is to be deducted before paying the State succession tax under St. 1891, c. 425. We are of opinion that it is to be deducted.

Whatever the nature of the State succession tax, it is admitted and is obvious that the value of the property concerned is made the measure of the tax. This appears from the words of the act, which also show at what moment the value is to be taken. The words are " property . . . which shall pass . . . to any person." Without throwing doubt upon the power of the State to adopt a harsher rule, such as has been applied by some of the surrogates in New York, we are of opinion that these words most naturally signify the property which the legatee actually would get were it not for the State tax imposed by the sentence in which the words occur. See *In re Merriam*, 141 N. Y. 479, 484 ; *S. C. sub nom. United States* v. *Perkins*, 163 U. S. 625, 630. It already has been decided upon this ground that expenses of administration are to be deducted. *Callahan* v. *Woodbridge*, 171 Mass. 595, 599, 600.

The question is not one of precedence between the Commonwealth and the United States, as it was put by the Assistant Attorney General. It is in substance one of justice, and in form one of construction. The United States recognizes, as it ought, the same principle by deducting the State succession tax before computing its own. State inheritance tax laws are apt to aim at seizing all that they can get without regard to consistency of principle, but when it is possible to interpret them to mean what is just, we must do so. Compare St. 57 & 58 Vict. c. 30, §§ 7 (4), 20.

The other question is whether a succession tax is payable on a legacy left to the New England Trust Company of Boston, " the interest upon which they will pay to needy aged men and women who had been in better circumstances in early life, but had become in want when in old age." The legacy was $100,000, but was cut down to $80,000 by a compromise approved as pro-

vided in Pub. Sts. c. 142, §§ 12–17. The exception in the act of 1891 which is relied on is in the words " other than . . . to or for charitable, educational, or religious societies or institutions, the property of which is exempt by law from taxation." Giving the broadest latitude to the word " institution," and assuming that there is an exemption if a charitable institution of the kind described is either trustee or *cestui que trust,* we cannot read the words as meaning to embrace all charitable gifts. That is what the argument for the legatees comes to. It is suggested that we are to read the word " institution " as equivalent to the German *stiftung,* and as satisfied when there is a fund permanently. devoted to charity. We think ˙it very clear that this would be a perversion of the words from their plain meaning and the substitution of an unidiomatic and remote conception which would not occur to ordinary minds. The contrary is implied in *Essex* v. *Brooks,* 164 Mass. 79. Very likely the institution need not be incorporated, but it is contemplated as an owner of property, not as property.

*Decree accordingly.*