[Civ. No. 25342.  First Dist., Div. Two.  Sept. 24, 1968.]

Estate of JEAN ANN WILSON, Deceased. HOUSTON I. FLOURNOY, as State Controller, Claimant and Appellant, v. BANK OF AMERICA, as Executor, etc., Objector and Respondent.

Joseph D. Lear, Milton D. Harris and Patricia Streloff for Claimant and Appellant.

David Henry Gill and B. L. Kirschen for Objector and Respondent.

TAYLOR, J.—On this appeal by the State Controller from an order sustaining respondent's objections to the report of the inheritance tax appraiser, the only question concerns the correct interpretation of the exemption from the California inheritance tax granted to a charitable recipient in a foreign country that does "not impose a legacy, succession, or death tax of any character in respect to property transferred" to a similar recipient existing under the laws of California. The state argues that the trial court erred in limiting the above language to inheritance taxes imposed by the foreign country, and concluding that the foreign recipients in this case qualified for the exemption.

The facts are not in dispute. The decedent, Jean Ann Wilson, a resident of Monterey County, died testate on August 15, 1965, and respondent bank was appointed as executor. The

will made bequests to four foreign charitable institutions, two organized under the laws of Scotland, and two under the laws of England, in the amounts set forth below.[1] The inheritance tax appraiser found the inheritance taxes due totaled $7,427.-99, which amount included $6,837.99 on the transfers to the four foreign charities, as set forth below.[2]

Respondent filed objections asserting that the transfers to the foreign charities were exempt from inheritance taxes pursuant to section 13842, subdivision (c), subsection (1) of the Revenue and Taxation Code, as the foreign jurisdictions involved imposed no inheritance tax, and also requested an increase in the ordinary fees pursuant to section 13988.1 of the Revenue and Taxation Code.

The uncontroverted evidence indicated that under the laws of England, no inheritance or succession tax of any kind would be payable in respect to a transfer to a similar institution existing under the laws of California. However, any estate exceeding £5,000 in value is subject to a "death tax" at a graduated rate. This tax "slice" is a first charge on the estate. Under the applicable laws of Scotland, likewise no inheritance or succession duty would be imposed on a transfer to a foreign legatee. As in England, an estate duty is imposed on all estates where the total of the net estate exceeds £5,000. This estate duty is calculated on a graduated scale on the whole estate but borne only by the residue.

The pertinent portions of section 13842 of the Revenue and Taxation Code provide as follows: "Property transferred to [any charitable, religious, etc. institution or purpose] is exempt from the tax imposed by this part, if any of the following conditions is present:

"(a) The [recipient] is organized . . . under the laws of this state or of the United States;

"(b) The property transferred is limited for use within this state;

"(c) In the event that the . . . [recipient] is organized or

---

[1] (1) Cash in the amount of $3,000 to the Eventide Home at Balmedie, Aberdeenshire, Scotland;
(2) One-third of the residue to the Aberdeen Royal Infirmary at Forester Hill, Aberdeen, Scotland;
(3) One-sixth of the residue to the Royal Institute for the Blind at London, England;
(4) One-sixth of the residue to St. Dunstan's Hospital for the Blind at London, England.

[2] $295 on the transfer to Eventide Home; $3,429.79 on the transfer to the Aberdeen Royal Infirmary; and $1,556.60 on each of the transfers to the Royal Institute for the Blind and St. Dunstan's Hospital for the Blind.

existing under the laws of a . . . foreign . . . country, at the date of the decedent's death either of the following occurred:

"(1) The . . . foreign country did not impose a legacy, succession, or death tax of any character in respect to property transferred to a similar . . . [recipient] organized or existing under the laws of this state.

"(2) The laws of the . . . foreign country contained a reciprocal provision under which the property transferred to a similar . . . [recipient] was exempt from legacy, succession, or death taxes of every character, if the . . . foreign country allowed a similar exemption in respect to property transferred to a similar . . . [recipient] organized or existing under the laws of another territory or state of the United States or foreign state or country."

As it is undisputed that none of the four recipients qualified for the exemption pursuant to subdivisions (a) or (b) of the statute, and the laws of Scotland and England contained no such reciprocal exemption provision as that mentioned in subdivision (c), subsection (2), we are concerned only with the meaning of the following language of subdivision (c), subsection (1): "death tax of any character in respect to property transferred" to a similar recipient organized or existing under the laws of this state.

The trial court held that the language in question was limited to a succession or inheritance tax and concluded that since the foreign taxes here involved were in the nature of estate or transfer taxes, the foreign recipients were entitled to the exemption from the California inheritance tax. The state argues that the language in question applies to any kind of death tax in respect to property transferred at death, including the foreign estate taxes here involved, and consequently the necessary conditions for an exemption pursuant to subdivision (c), subsection (1) were not met.

When there is no dispute as to the facts, the matter of application and construction of the exemption in relation to the particular bequest becomes a question of law, and we are not bound by the lower court's construction, but must make the final determination in accordance with the applicable principle of law (*Estate of Fleming*, 31 Cal.2d 514, 523 [190 P.2d 611]).

The court below reasoned that the present statutes confine California to an inheritance tax; therefore, "in respect to property transferred," as used in section 13842, subdivision (c), subsection (1), could only refer to property in-

herited and applied only to an inheritance tax. We do not agree.

In establishing exemptions from the California inheritance tax, the Legislature is free to impose any conditions it chooses. As stated in *Estate of Burnison,* 33 Cal.2d 638, at pages 639-640 [204 P.2d 330], " 'the right to make testamentary disposition of property is not an inherent right or a right of citizenship, nor is is it even a right granted by the constitution. It rests wholly upon the legislative will, and is derived entirely from the statutes.' [Citations.] The Legislature may withhold the right altogether, or impose any conditions or limitations upon it which it chooses." It is on the basis of this power that this state has an absolute right to deny any deduction whatever for federal estate taxes (*Estate of Fabris,* 200 Cal.App.2d 408 [19 Cal.Rptr. 397]; *Estate of Slack,* 86 Cal.App.2d 49 [194 P.2d 61]; *Estate of Watkinson,* 191 Cal. 591 [217 P. 1073]).

The condition imposed by section 13842, subdivision (c), subsection (1) is that the foreign country not impose a "death tax of any character in respect to property transferred to a similar . . . institution . . . organized or existing under the laws of this state." Read literally, "death tax of any character in respect to property transferred" refers to an estate tax since such tax is a transfer tax.

We cannot agree with respondent that the application of subdivision (c), subsection (1) is limited only to inheritance taxes, while the application of subdivision (c), subsection (2) encompasses both inheritance and estate taxes. In reading both subdivision (c), subsection (1) and subdivision (c), subsection (2), it is readily apparent that the placement of the phrase "in respect to property transferred" is a matter of grammar and not limitation. Elimination of the phrase from subdivision (c), subsection (1) would not, as respondent suggests, remove a limitation but leave an ungrammatical jumble of words. Subdivision (c), subsection (2) refers also to "property transferred" and an "exemption in respect to property transferred."

Reading section 13842 as a whole, a logical, readily ascertainable series of exemptions applies. Property transferred to a charitable recipient is exempt from the California inheritance tax if: (a) the recipient is organized under the laws of this state or the United States; (b) the property is limited for use in California; (c) in case of foreign recipients, if: (1) the foreign jurisdiction imposes no death tax of any kind on

property transferred to a similar recipient or (2) the laws of foreign jurisdictions contain a reciprocal exemption provision for such transfers. Both subdivision (c), subsection (1) and subdivision (c), subsection (2) refer to the same situation— no death tax of any kind payable to the foreign jurisdiction, either because none is imposed, subdivision (c), subsection (1), or because, if imposed, the laws of the foreign jurisdiction provide for an exemption therefrom, subdivision (c), subsection (2).

The purpose of subdivision (c) is to encourage foreign jurisdictions to exempt local charitable recipients by either imposing no tax on transfers to them or providing exemptions, "and so redound to mutual public benefit on a strictly *quid pro quo* basis" (*Estate of Fleming, supra,* 520). Respondent's position allows a foreign jurisdiction to exact an estate tax on gifts to California charitable recipients, while California could not impose its inheritance tax on gifts to charitable recipients in the same foreign jurisdiction. Thus, the limitation of subdivision (c), subsection (1) to foreign inheritance taxes is directly contrary to the purpose of the statute.

An identical legal issue was raised and determined in accordance with the theory here advanced by the state in *Merrill Trust Co.* v. *Johnson* (1963) 159 Me. 45 [188 A.2d 75]. In that case, the decedent, a resident of Maine, by transfers taking effect at death, gave over $100,000 plus 5 percent of his residuary estate to an educational institution incorporated under the laws of Rhode Island. The State of Maine imposed an inheritance tax on the total property passing to the Rhode Island educational institution. As in the case at hand, the domicile of the transferee (Rhode Island) had only an estate tax with no deductions or exemption for gifts to charities, and the domicile of the transferror (Maine) had an inheritance tax with an exemption provision, the pertinent portion of which provided that a transfer to a foreign charity should be exempted from tax if the foreign jurisdiction did not impose a legacy or succession tax or a death tax of any character in respect of property passing to or for the use of such institution.

Thus, the Maine exemption provision is identical to our Revenue and Taxation Code section 13842, subdivision (c), subsection (1), except that the Maine statute refers to a death tax of any character "in respect of property passing to or for" the use of a Maine charitable recipient. Respondent

argues that "of" is broader than "to," and that, consequently, the Maine statute is entirely different, was properly construed, and the case is distinguishable. We can deduce no such major substantial difference from the slight variance in the language used in the two statutes. To us, the phrases "in respect of" in the Maine statute and the phrase "in respect to" in the California statute have identical meanings in the context of substantially identical exemption statutes.

We think *Merrill* is on all fours with the instant case and highly relevant. There, as here, an identical contention as to the distinction between a succession tax and a transfer tax was made. The court noted this distinction as follows at page 77: "It is not urged by the defendant that the Rhode Island law imposes a legacy or succession tax as such upon the right of a qualified Maine institution to receive property under the will of a Rhode Island decedent. The controversy centers upon the significance of the phrase 'death tax of any character,' appearing in clauses (A) and (B) as we have identified them. We can agree with the Hart estate that the transfer tax imposed by Section 1, Chapter 22, Title 44, General Laws of Rhode Island is not a tax on property. It is by its terms a tax upon the right to transfer as to which Maine law has no counterpart. Both Maine and Rhode Island have declared that an inheritance or succession tax is not a tax on property, but is a tax on the privilege of receiving property. [Citations.]"

The court, however, did not believe that the distinction between the two types of death taxes was in any way decisive of the issue. In upholding the imposition of the inheritance tax by Maine and concluding that the statutory provision was not limited only to exemptions from an inheritance tax, the court held at pages 77 and 78: "We must conclude that as applied to the facts in this case the tax so imposed is a death tax and is a tax of a character having to do with and pertaining to any and all property which passes through a net estate in excess of $10,000 from a Rhode Island decedent to an otherwise qualified Maine college. In spite of semantics any residuary bequest to a Maine educational institution, by its nature otherwise qualified, through a net estate in excess of $10,000 of a Rhode Island decedent is invaded and depleted by the Rhode Island transfer tax under discussion. The gifts *inter vivos* and bequest here are in fact taxed, though indirectly, and though the impact of the tax is borne by the residuary estate."

Similarly here, the Scottish and English death duties are in

fact indirectly imposed on gifts to California charitable recipients, even though the impact is born by the residuary estate. We hold that the statutory phrase "death tax of any character" in respect to property transferred, as used in section 13842, subdivision (c), subsection (1) of the Revenue and Taxation Code, must be construed to include an estate or transfer tax such as that imposed by the foreign jurisdictions here in question. We note that the phrase "death tax" has been held to cover all forms of taxes based upon death (*Matthews* v. *Jones* (Tex. Civ. App. 1952) 245 S.W.2d 974, 977). As we have concluded that the words of the statute are not ambiguous and their plain meaning can be given effect, we need not discuss respondent's contentions relating to the rules of statutory construction. These rules are applied only when the meaning of the statutory language is doubtful (*County of Sacramento* v. *Hickman,* 66 Cal.2d 841 [59 Cal. Rptr. 609, 428 P.2d 593]).

As both Scotland and England impose a death tax in respect to property transferred to a similar California recipient, the four foreign beneficiaries here involved have not qualified for the exemption from the California inheritance tax, pursuant to Revenue and Taxation Code section 13842, subdivision (c), subsection (1).

The order appealed from is reversed.

Shoemaker, P. J., and Agee, J., concurred.